# EXHIBIT A


## GTECH®

**Restrictive Agreement**

THIS AGREEMENT ("Agreement") made this _12_ day of _MARCH_ 20 _14_ , by and between GTECH Corporation, a Delaware corporation, with offices at 10 Memorial Blvd., Providence, Rhode Island 02903 ("GTECH"), and _COLIN HADDS,_ an individual residing at _1, FULLERS GROVE, FULLERS HILL, CHESHAM HP5 1LR , UK_ ("Employee").

### WITNESSETH

WHEREAS, GTECH has hired or is considering hiring Employee as an employee, and Employee has agreed or is considering agreeing to perform certain services as an employee for and on behalf of GTECH; and

WHEREAS, as a condition to such relationship or such consideration thereof, GTECH requires certain protections of its business interests.

NOW THEREFORE, in consideration of the foregoing and of the sum of One Dollar and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound hereby, agree as follows:

1.      Definitions.  The following terms shall have the meanings indicated below:

Company:  GTECH and/or its parent, affiliates or subsidiaries.

Services and Products:  All gaming systems and equipment and all other products and services which the Company markets or provides or which to Employee's knowledge the Company plans to market or provide.

Employment:  As used herein, "Employment" shall mean all past, present and future business activities relating to Services and Products engaged in by Employee as an employee of the Company or as a negotiant for such position, and "Employment" shall also mean the period of time covered by such activities.

2.      Confidential Information.  Confidential Information shall mean all non-public information, oral or written, and materials (in any medium), including trade secrets, of which Employee becomes aware as a result of or in the course of Employment which could reasonably be understood to be confidential, whether or not so marked, and is related to the Company's business and all other information or data identified as proprietary or confidential at the time of disclosure. Except as required pursuant to Employment, or as authorized by GTECH in writing, Employee shall never directly or indirectly use or disclose, and shall take all reasonable steps to prevent others from using or disclosing any information, discovered or acquired by Employee during or by virtue of Employment, which relates to the Company, its Services and Products or to any Invention (as defined in Section 3 hereof), except information which through no fault of Employee is or becomes published or otherwise publicly available.



Updated 6-13-07

Immediately upon termination of Employment or when sooner requested by GTECH, Employee shall deliver to GTECH all records and other things containing or embodying Confidential Information within Employee's possession or control, whether or not such records, things or information were generated by Employee.

3.    Inventions. Employee hereby unreservedly assigns to GTECH all rights Employee may have or hereafter acquire in any new information, concept or thing (whether or not patentable) which is both (i) based upon or related to any Confidential Information or Services and Products and (ii) generated during Employment or within one year after termination thereof ("Invention").

Employee shall make prompt and full disclosure of each Invention to GTECH and, at GTECH's request and expense, shall execute and/or assist GTECH in executing formal applications for patents, copyrights or other commercial protections anywhere in the world, and Employee shall do all other things deemed by GTECH to be necessary or desirable to effect the full assignment and protection of all the rights to Inventions herein granted to GTECH.

4.    Non-Competition. During Employment and for three (3) years immediately thereafter, Employee shall not disturb any business relationship between GTECH and its employees, dealers, customers, suppliers or other business associates. During Employment and for eighteen (18) months immediately thereafter, Employee shall not directly or indirectly engage in any activity (if such activity is reasonably related to any activity engaged in by Employee as an employee of the Company) in conjunction with and to the benefit of any business or endeavor which is reasonably deemed by GTECH to be, or about to be in competition with Services and Products anywhere in the world where GTECH is then doing or pursuing business or is to Employee's knowledge about to do or pursue business.

Employee shall promptly notify GTECH of any change in address, non-Company employment or business activity occurring within eighteen (18) months after termination of Employment. Such notice shall include the name and address of each such employer as well as the nature of each such non-Company employment or business activity.

5.    Code of Conduct. GTECH's Code of Conduct is incorporated by reference into this Agreement. Employee represents that he/she has fully read and understands the Code of Conduct.

6.    Scienter. Employee represents that he/she has read and fully understands this Agreement, having consulted such persons as he/she deems appropriate regarding its scope and effect.

7. Construction.

a. Except as may otherwise be provided herein, this writing represents the entire Agreement and understanding of the parties with respect to the subject matter hereof, and supersedes all prior agreements and understandings of the parties in respect thereto.

b. Nothing contained herein shall be construed as giving Employee any right to employment with the Company.

c. In case any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the enforceability of any other provisions of this Agreement. If any one or more of the provisions contained herein shall for any reason be held to be excessively broad as to duration, scope, activity or subject, it shall be construed, by limiting or reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall then appear. Employee acknowledges that the duration, territorial and other restrictions set forth herein are, at this time, reasonable to protect GTECH's business interests.

d. This Agreement shall not be modified except in writing signed by all parties hereto.

e. No waiver of any provisions of this Agreement shall be effective unless agreed to in writing by the party against whom such waiver is sought to be enforced. Waiver of any default or breach hereunder shall not constitute a waiver of any other default or breach whether similar or otherwise.

f. Section headings are for convenience only and do not form any part of this Agreement and shall not affect the meaning thereof.

g. The validity, interpretation, and enforcement of this Agreement shall be governed by the laws of Rhode Island other than any rule that might refer such matters to the laws of any other jurisdiction.

8. Binding Effect.

a. This Agreement shall be binding upon and inure to the benefit of GTECH its legal representatives and permitted assigns and upon Employee, his/her legal representatives, heirs, executors and administrators.

b. This Agreement shall be assignable by the Company in whole or in part, to any successor to substantially all of any major portion of the Company's business. This Agreement is not assignable by Employee.

c. The provisions of this Agreement shall survive termination of Employment.

d.    In addition to any other legal and/or equitable remedies available to GTECH for the enforcement of the terms hereof, GTECH shall be entitled to specific performance and to injunctive relief against any actual or actively contemplated violation thereof, including without limitation, ex parte temporary restraining orders without proof of irreparable harm, lack of alternatives at law and other usual prerequisites therefore.

IN WITNESS WHEREOF, the parties hereto have individually, or by their duly authorized representative(s), executed this Agreement as of the date first above written.

| Employee | For GTECH Corporation by |
|---|---|
| *signature* | *Danielle Miller signature* |
| Signature | Signature |
| COLIN HADDEN | Danielle Miller |
| Print Name | Print Name |

| Witness 1 | Witness 2 |
|---|---|
| | |
| Signature | Signature |
| | |
| Print Name | Print Name |

# EXHIBIT B



**GTECH® INDIANA**
Working on behalf of the State Lottery Commission of Indiana

December 9, 2013

Colin Hadden
1 Fullers Grove
Fullers Hill
Chesham, UK
HP51LR

Dear Colin:

Congratulations! GTECH Indiana, LLC ("GTECH"), in accordance with the terms of this letter, is pleased to offer you an international transfer to the position of **Chief Operating Officer and General Manager,** based in Indianapolis, IN. You will be reporting directly to Connie Laverty-O'Connor, CEO of GTECH Indiana, LLC.

The salary for this position will be **Two Hundred Fifty Thousand Dollars ($250,000.00)**, payable through direct deposit into your bank account in bi-weekly installments. I am sure you recognize that the quotation of an annual salary is for convenience and is not intended to indicate length of employment.

GTECH is an employment-at-will employer, meaning that employment may be terminated either by the employee or the Company at any time, without cause or without restriction. In accordance with this offer, GTECH will also provide you with a Separation Agreement (see attached document).

It is our practice that employees receive an annual review of their job performance. If your start date is prior to September 30th, your performance review will be based on your individual performance through December 31st of the current calendar year. If your hire date is after September 30th, your first performance review will be based on your individual performance through December 31st of next year and will be given the following year.

In addition to your base salary, your offer includes eligibility to participate in GTECH's Short-Term Incentive Plan (STIP), as is in effect or as it may be modified from time-to-time. This plan provides for incentive awards depending on GTECH's and GTECH Indiana's results as well as management's assessment of your personal contribution, including the accomplishment of specific, mutually agreed upon objectives (MBOs). Under the Short Term Incentive Plan, your performance will be measured against an established set of targets for each year, and depending upon performance against those targets, you will be eligible to receive a bonus in the range of Zero Percent (0%) to Seventy-Five Percent (75%) of eligible base salary. The annual *target* incentive award for your position is **Fifty Percent (50%)** of eligible base salary, depending on your personal contribution and GTECH's results in the calendar year. The aforementioned target



award does not constitute a guarantee of bonus payment. All incentive awards are paid at GTECH's discretion. For purpose of clarity, your 2013 STIP payment will be calculated based on the achievement of targets that were established in accordance with your current role within the International Region. For CY2014, your targets and measurements will be defined in accordance with your position with GTECH Indiana.

GTECH does operate an annual Long Term Incentive (LTI) Program aimed at senior level employees across the Company. In this new position, you will be eligible for consideration under this program. Allocation of LTI awards is subject to the annual decision and approval of the Board.

Please note that although your official hire date with GTECH Indiana is considered to be your effective date of transfer, we are pleased to advise that we will recognize all prior service credit from your employment with GTECH UK Ltd. as continuous service. The adjusted service date that will be recognized for your employment is March 2, 2009. This adjusted service will be used for the purpose of all benefit plan vesting (e.g. vacation accrual, service awards, 401k).

In connection with your employment and subject to current applicable GTECH policy, which may be revised from time-to-time, you will also receive the following benefits:

1. Vacation time in the amount of **Four (4) weeks** per year.
2. Participation in all other GTECH Benefit Plans (see enclosed).
3. Assignment of a Company vehicle to be arranged through our Corporate Fleet Program. Specific details will be provided under separate cover.

Accompanying this offer letter is your "Welcome Pack" which includes New Hire Orientation information. Prior to your start date, please review the information and complete the required forms (W4, Direct Deposit, Benefits, etc.) to ensure a smooth new hire process. We will be collecting the completed documentation during your orientation. Additionally, please bring proof of dependents (i.e. marriage license, birth certificates), if applying for insurance.

GTECH requires that you be in possession of all necessary documents before travelling to the United States to begin work. Accordingly, we will coordinate and provide immigration services to obtain the appropriate visa and work authorization to enable your international transfer. You will be required to gather and provide all necessary documentation as requested to the immigration provider in a timely manner. GTECH will also cover costs associated with obtaining the appropriate visa for your partner to accompany you to the US.

To assist you with your move from the UK to Indiana, you will be provided with relocation assistance as outlined below and your move will be managed by the Company's relocation service provider.

- **Home Finding Trip** – 5 day trip for you and your partner to find suitable long term housing accommodations. Specific benefits to include airfare transportation (economy class), hotel accommodations, meals and car rental.



- **Miscellaneous Allowance** – An allowance equivalent to 1 month salary, up to a maximum of $5,000.00, intended to cover miscellaneous expenses associated with your move.
- **Household Goods Shipment** – Reasonable costs associated with packing, insuring and transporting your household goods from the UK to IN.
- **Final Move Travel Transportation** – One-way economy class air travel transportation will be provided for you and your partner to complete your final move to the US.
- **Settling-In Services** – Two (2) day facilitated program to help you settle in at your new destination (i.e. area orientation, setting up utilities, obtaining local driver's license, opening bank accounts, etc.).
- **Housing Allowance** – A monthly allowance in the amount of Four Thousand Dollars ($4,000.00), grossed up for taxes, to be provided for the first twelve (12) months of your relocation
- **Tax Preparation** – Pre-departure tax consultation and tax filing assistance for the year of move (2014) and the subsequent year following (2015), will be provided by the Company's tax service provider
- **Travel Allowance** – A total of 8 roundtrip airfares, up to a maximum value of Ten Thousand Dollars ($10,000), to be provided for the first year following your transfer to the US. Continuation of such benefit is subject to annual review and approval.
- **New Home Purchase Assistance** – The Company will reimburse the normal and customary buyer-paid closing costs on a new home purchase, up to a maximum value of two percent (2%) of the purchase price. This assistance will be available for up to eighteen (18) months following your effective relocation date to the US.

If you elect to voluntarily terminate your employment with the Company within twelve (12) months of the effective date of your relocation, you will be required to repay your relocation costs. The following outlines the relocation costs owed to GTECH if your employment ends as noted above. In addition, all relocation benefits and payments will cease upon notice and/or separation.

- 100% of relocation costs and gross up, if voluntary termination is within the first twelve (12) months of your effective date of relocation.

By signing this letter, you are confirming your understanding and acceptance of its terms and conditions and your acknowledgement of the repayment terms. This signed letter will be required prior to receiving any relocation benefits.

This offer of employment, and continuation of your employment with GTECH, is subject to and contingent upon the following:

1. Execution of a non-disclosure and non-competition agreement, in favor of GTECH, prior to commencement of employment. (See enclosed "Welcome Pack".)
2. Review and signed acknowledgement of the Company's Code of Conduct. (See enclosed "Welcome Pack".)
3. Certain positions may also require further security clearance based upon the requirements of GTECH's customers and/or regulators. If your position requires that you obtain a



gaming license to work on behalf of a specific jurisdiction, you will be required to obtain such gaming license and maintain it for as long as your position deems necessary. Depending upon the position, certain jurisdictions may require additional personal disclosures which may include, but not be limited to, personal financial records, character references, etc. GTECH will be responsible for the costs associated with the processing of such license(s).

4. Completion of a Form I-9 in compliance with the Immigration Reform and Control Act of 1986. On your agreed upon start date, please bring acceptable forms of identification which verify you are eligible to work in the United States. Additionally, in certain states, employers may be required to confirm work authorization using E-Verify; a service of the Department of Homeland Security and the Social Security Administration. Acceptable forms of identification are listed on the reverse side of the Form I-9. (See enclosed "Welcome Pack".)

In the unlikely event your employment with GTECH is terminated by GTECH for a reason other than "cause" as determined at the sole discretion of the Company, you will be provided with the following repatriation assistance and services will be managed by our relocation services provider:

- **Repatriation Transportation** – One-way economy class air travel transportation only will be provided for you and your partner back to the UK.
- **Household Goods Shipment** – Reasonable costs associated with packing, insuring and transporting your household goods back to the UK.

If your employment is terminated by GTECH for "cause" no repatriation or support assistance will be provided for your return to your home country.

Colin, we are so enthusiastic about your anticipated contribution to GTECH Indiana, LLC and look forward to you joining and becoming an integral part of the leadership team. On your agreed start date, please report to the reception area at the Indianapolis Headquarters Office located at 1302 North Meridian Street, at 9:00am for Orientation. Again, please bring your completed forms to Orientation with you on your first day.

Kindly indicate your acceptance of this offer by signing the enclosed copy of this letter where indicated and returning it to Lisa DeFruscio. In doing so, we recognize that your initial acceptance is provisional and contingent upon final verification and understanding of tax and cost of living implications, that will be clarified during your pending appointment with Price Waterhouse Coopers (PWC). Should we determine and agree that modifications to the terms and conditions outlined above are appropriate, a revised offer letter will be presented for your final signature. Otherwise, your acceptance of this offer will be confirmed.

Sincerely,

Cornelia Laverty-O'Connor
CEO
GTECH Indiana, LLC

I hereby accept the above-described position with GTECH Indiana, LLC, upon the terms and conditions set forth herein.

Date: _____ 10ᵀᴴ DECEMBER 2013 _____

Signature: _____

Start Date: _____ TBD _____

# EXHIBIT C

# SEYFARTH
## SHAW

Seyfarth Shaw LLP

233 South Wacker Drive

Suite 8000

Chicago, Illinois 60606-6448

(312) 460-5000

fax (312) 460-7000

www.seyfarth.com

Writer's direct phone
(312) 460-5957

Writer's e-mail
jbeyer@seyfarth.com

November 17, 2017

**VIA E-MAIL**
**AND FEDEX OVERNIGHT DELIVERY**

Colin Hadden
12018 Sail Place Drive
Indianapolis, Indiana 46256
colin@elmshouse.co.uk

Re:    **Obligations Owed to IGT Indiana, LLC.**

Dear Mr. Hadden:

This law firm serves as litigation counsel for IGT Indiana, LLC (formerly known as GTECH Indiana, LLC) ("IGT"). We write to you on behalf of IGT so that you may avoid costly litigation which may be initiated shortly to enforce IGT's rights regarding the Restrictive Agreement you entered into with IGT on March 12, 2014 (the "Agreement"), a copy of which is enclosed. IGT has recently learned that you improperly took employment with Camelot Illinois LLC ("Camelot") for a position substantially identical to the position that you held with IGT.

Your contractual obligations with IGT prohibit you for a period of 18 months (until on or around May 2, 2019) from directly or indirectly competing against IGT in a position that is reasonably related to any activity you engaged in while you were employed with IGT. Given the nature of IGT's business, your restrictions apply anywhere in which IGT is then doing or pursuing business. You are also prohibited, for a period of three years, from interfering with IGT's employees, dealers, customers, suppliers, or other business associates. Additionally, you are prohibited from utilizing or disclosing IGT's confidential information and were required upon your resignation to return all IGT property to IGT, including any IGT confidential information.

IGT has learned that you have been hired by Camelot to serve as General Manager in charge of providing services to the Illinois Lottery, a role substantially identical to the role you held with IGT in Indiana. This is a direct violation of your Agreement. Given that Camelot has had no business presence in this space in the United States prior to winning the Illinois contract, IGT is concerned that you will be required to utilize IGT's confidential and proprietary information in this position and improperly compete against IGT in other states or jurisdictions that currently have its lottery privately run or that are opting or considering to privatize their lottery. We have further

42453180v.1

THIS LETTERHEAD IS PRINTED ON RECYCLED STOCK.

WASHINGTON, D.C.  SYDNEY  SHANGHAI  SAN FRANCISCO  SACRAMENTO  NEW YORK  MELBOURNE  LOS ANGELES  LONDON  HOUSTON  CHICAGO  BOSTON  ATLANTA



learned that you have continued to reach out to IGT's employees and representatives of the Indiana lottery, communications of which we are also highly concerned.

Your actions directly violate your contractual obligations, as well as statutes and common law, which prohibit the use of trade secrets, unfair competition, tortious interference, and breaches of restrictive covenant agreements. IGT has spent considerable time and resources developing its client relationships, goodwill, intellectual capital, and confidential information. As one of many examples, you directly participated in the development process of IGT's business plans submitted annually to the Hoosier Lottery, the process of which IGT maintains as highly proprietary and which would unfairly benefit any IGT competitor, including Camelot. This strategic and proprietary information can easily be co-opted and used by Camelot, both in Illinois and in other privately run lottery jurisdictions. IGT will not allow its intellectual capital or customers to be jeopardized and will not allow the value of its proprietary information to be diminished.

IGT will enforce its rights under your Agreement against you and anyone acting in concert with you, including Camelot, if such action is necessary. Should IGT succeed on the merits of its case, you may be responsible for attorney's fees and damages incurred as a result of violations of your agreement and your tortious conduct.

Should you and Camelot wish to resolve this matter amicably, IGT demands that, by no later than November 27, 2017, you: (1) provide an explanation of your job responsibilities with Camelot and how your employment does not breach your Agreement; (2) provide an explanation of your contacts and continued communications with IGT's employees and the Indiana lottery following your resignation of your IGT employment, including the substance and reason for those communications; (3) cease all uses and disclosures of IGT's confidential and trade secret information; (4) cease any improper solicitations of IGT's employees or customers; (5) return all IGT property, including confidential information in both hard and electronic format, in your possession; and (6) provide IGT with a sworn statement as to the following items: (a) an accounting of each IGT actual and potential customers you contacted since joining Camelot; and (b) an accounting of all confidential IGT information in your possession, including, but not limited to, where that information is stored, how it has been used, and whether this information is currently residing on any Camelot or other IGT competitor's computer system. Moreover, Camelot must also immediately: (1) cease all uses and disclosures of IGT's confidential information; (2) return to IGT all IGT property in Camelot's possession, including confidential information in both hard and electronic format; and (3) prohibit you from improperly competing against IGT until after May 2, 2019.

Should you fail to comply with IGT's requests, IGT will pursue all legal action available to it. IGT sends this letter without waiving any of its rights to pursue legal action and collect damages from you and/or Camelot.

Because IGT is in a dispute with you, and possibly your new employer, that may result in litigation, you and Camelot are directed to ensure that all documents, records, evidence, electronic data, and metadata related to these issues are preserved and are not altered, destroyed, or compromised in any way whether in hard copy or an electronic format.



Colin Hadden
November 17, 2017
Page 3

Should you have any questions regarding your obligations, you or your attorney may contact me at (312) 460-5957.

Very truly yours,

SEYFARTH SHAW LLP

Justin K. Beyer

JKB
Enclosures
cc:   Michael D. Wexler (w/enclosures)
      Georgette Pan, Assistant General Counsel, IGT (w/enclosures)
      Neil Brocklehurst, Camelot (w/enclosures)



**Restrictive Agreement**

THIS AGREEMENT ("Agreement") made this __*12*__ day of __*MARCH*__ 20 _*14*_ , by and between GTECH Corporation, a Delaware corporation, with offices at 10 Memorial Blvd., Providence, Rhode Island 02903 ("GTECH"), and __*COLIN HADDS*__, an individual residing at _*1, FULLERS GROVE, FULLERS HILL, CHESHAM HP51LR, UK*_ ("Employee").

WITNESSETH

WHEREAS, GTECH has hired or is considering hiring Employee as an employee, and Employee has agreed or is considering agreeing to perform certain services as an employee for and on behalf of GTECH; and

WHEREAS, as a condition to such relationship or such consideration thereof, GTECH requires certain protections of its business interests.

NOW THEREFORE, in consideration of the foregoing and of the sum of One Dollar and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound hereby, agree as follows:

1.     Definitions.  The following terms shall have the meanings indicated below:

Company:  GTECH and/or its parent, affiliates or subsidiaries.

Services and Products:  All gaming systems and equipment and all other products and services which the Company markets or provides or which to Employee's knowledge the Company plans to market or provide.

Employment:  As used herein, "Employment" shall mean all past, present and future business activities relating to Services and Products engaged in by Employee as an employee of the Company or as a negotiant for such position, and "Employment" shall also mean the period of time covered by such activities.

2.     Confidential Information.  Confidential Information shall mean all non-public information, oral or written, and materials (in any medium), including trade secrets, of which Employee becomes aware as a result of or in the course of Employment which could reasonably be understood to be confidential, whether or not so marked, and is related to the Company's business and all other information or data identified as proprietary or confidential at the time of disclosure. Except as required pursuant to Employment, or as authorized by GTECH in writing, Employee shall never directly or indirectly use or disclose, and shall take all reasonable steps to prevent others from using or disclosing any information, discovered or acquired by Employee during or by virtue of Employment, which relates to the Company, its Services and Products or to any Invention (as defined in Section 3 hereof), except information which through no fault of Employee is or becomes published or otherwise publicly available.



Page 1 of 4

Updated 6-13-07

Immediately upon termination of Employment or when sooner requested by GTECH, Employee shall deliver to GTECH all records and other things containing or embodying Confidential Information within Employee's possession or control, whether or not such records, things or information were generated by Employee.

3.  Inventions.  Employee hereby unreservedly assigns to GTECH all rights Employee may have or hereafter acquire in any new information, concept or thing (whether or not patentable) which is both (i) based upon or related to any Confidential Information or Services and Products and (ii) generated during Employment or within one year after termination thereof ("Invention").

Employee shall make prompt and full disclosure of each Invention to GTECH and, at GTECH's request and expense, shall execute and/or assist GTECH in executing formal applications for patents, copyrights or other commercial protections anywhere in the world, and Employee shall do all other things deemed by GTECH to be necessary or desirable to effect the full assignment and protection of all the rights to Inventions herein granted to GTECH.

4.  Non-Competition.  During Employment and for three (3) years immediately thereafter, Employee shall not disturb any business relationship between GTECH and its employees, dealers, customers, suppliers or other business associates.  During Employment and for eighteen (18) months immediately thereafter, Employee shall not directly or indirectly engage in any activity (if such activity is reasonably related to any activity engaged in by Employee as an employee of the Company) in conjunction with and to the benefit of any business or endeavor which is reasonably deemed by GTECH to be, or about to be in competition with Services and Products anywhere in the world where GTECH is then doing or pursuing business or is to Employee's knowledge about to do or pursue business.

Employee shall promptly notify GTECH of any change in address, non-Company employment or business activity occurring within eighteen (18) months after termination of Employment.  Such notice shall include the name and address of each such employer as well as the nature of each such non-Company employment or business activity.

5.  Code of Conduct.  GTECH's Code of Conduct is incorporated by reference into this Agreement.  Employee represents that he/she has fully read and understands the Code of Conduct.

6.  Scienter.  Employee represents that he/she has read and fully understands this Agreement, having consulted such persons as he/she deems appropriate regarding its scope and effect.

7.    Construction.

a.    Except as may otherwise be provided herein, this writing represents the entire Agreement and understanding of the parties with respect to the subject matter hereof, and supersedes all prior agreements and understandings of the parties in respect thereto.

b.    Nothing contained herein shall be construed as giving Employee any right to employment with the Company.

c.    In case any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the enforceability of any other provisions of this Agreement.  If any one or more of the provisions contained herein shall for any reason be held to be excessively broad as to duration, scope, activity or subject, it shall be construed, by limiting or reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall then appear.  Employee acknowledges that the duration, territorial and other restrictions set forth herein are, at this time, reasonable to protect GTECH's business interests.

d.    This Agreement shall not be modified except in writing signed by all parties hereto.

e.    No waiver of any provisions of this Agreement shall be effective unless agreed to in writing by the party against whom such waiver is sought to be enforced.  Waiver of any default or breach hereunder shall not constitute a waiver of any other default or breach whether similar or otherwise.

f.    Section headings are for convenience only and do not form any part of this Agreement and shall not affect the meaning thereof.

g.    The validity, interpretation, and enforcement of this Agreement shall be governed by the laws of Rhode Island other than any rule that might refer such matters to the laws of any other jurisdiction.

8.    Binding Effect.

a.    This Agreement shall be binding upon and inure to the benefit of GTECH its legal representatives and permitted assigns and upon Employee, his/her legal representatives, heirs, executors and administrators.

b.    This Agreement shall be assignable by the Company in whole or in part, to any successor to substantially all of any major portion of the Company's business.  This Agreement is not assignable by Employee.

c.    The provisions of this Agreement shall survive termination of Employment.

d.      In addition to any other legal and/or equitable remedies available to GTECH for the enforcement of the terms hereof, GTECH shall be entitled to specific performance and to injunctive relief against any actual or actively contemplated violation thereof, including without limitation, ex parte temporary restraining orders without proof of irreparable harm, lack of alternatives at law and other usual prerequisites therefore.

IN WITNESS WHEREOF, the parties hereto have individually, or by their duly authorized representative(s), executed this Agreement as of the date first above written.

| Employee | For GTECH Corporation by |
|---|---|
| Signature | Signature |
| COLIN HADDEN  Print Name | Danielle Miller  Print Name |

| Witness 1 | Witness 2 |
|---|---|
| Signature | Signature |
| Print Name | Print Name |

# EXHIBIT D



131 South Dearborn Street
Suite 1700
Chicago, IL 60603-5559

T +1.312.324.8400
F +1.312.324.9400
PerkinsCoie.com

November 27, 2017

Craig T. Boggs
CBoggs@perkinscoie.com
D  +1.312.324.8628
F  +1.312.324.9628

**VIA EMAIL**

Justin K. Beyer
Seyfarth Shaw LLP
233 South Wacker Drive
Suite 8000
Chicago, IL 60606
jbeyer@seyfarth.com

**Re:  Colin Hadden and IGT Indiana, LLC**

Dear Mr. Beyer:

My firm represents Colin Hadden and his new employer Camelot Illinois LLC.  I am in receipt of your November 17, 2017 letter.

While my clients disagree with many of the assertions in your letter (especially with regard to the enforceability of the restrictive covenants in the March 12, 2014 Restrictive Agreement), Mr. Hadden has not breached nor does he intend to breach any of the provisions in the Restrictive Agreement even if they were enforceable.  Outlined below is the confirming information you requested.

(1)    Mr. Hadden will serve as the General Manager of the Illinois Lottery and will manage the day-to-day operations of the Illinois Lottery.  Because the Illinois Lottery does not compete with the products or services of IGT given that IGT will no longer have responsibility for the Illinois Lottery, Mr. Hadden's employment with Camelot will not breach the Restrictive Agreement.

(2)    Mr. Hadden has had very limited communications with employees of IGT or the Indiana Lottery since he was not permitted to return to IGT's offices earlier this month before he had a chance to say goodbye to his long-time work colleagues.  Mr. Hadden did subsequently have contact with former work colleagues Melissa Pursley, Tracy McNutt, Clayton Atkinson, and Tonya Jester after he left IGT to tell them goodbye and good luck, ask if they were okay and to arrange to collect his personal items and information and/or return IGT property. He also contacted Jessica Norris to request the name of a local florist.  He also received a call from Melissa Pursley who shared information about a personal vacation trip she took, and he also texted Tonya Jester to confirm that he had received his property back from IGT.  Mr. Hadden also contacted attorney Adam Parker to obtain information necessary for a disclosure he had to make to the State of Illinois.  He also contacted Sarah Taylor, the Director of the Hoosier

137710635.1

Perkins Coie LLP

Justin K. Beyer
November 27, 2017
Page 2

Lottery, asking how the Hoosier Lottery planned to announce his departure. Finally, Jackie Cuthbert recently contacted Mr. Hadden through LinkedIn asking about potential employment with the Illinois Lottery, and Mr. Hadden responded that he could not discuss that subject with her.

(3)     Mr. Hadden has not used or described any IGT confidential or trade secret information to anyone and will not do so.

(4)     Mr. Hadden has not solicited any IGT employee or customer and will not do so until at least after May 2, 2019.

(5)     Mr. Hadden has no IGT property or confidential information in hard or electronic format in his possession.

(6)     With respect to your request for a sworn statement from Mr. Hadden, please see attached.

From Camelot's perspective, please understand that Camelot has never possessed, used or divulged any of IGT's confidential information and will not do so in the future. Camelot also does not intend to utilize Mr. Hadden in pursuing any opportunities outside of Illinois at least until after May 2, 2019.

If you have any questions or concerns about any of the above or the attached sworn statement, please do not hesitate to contact me. Mr. Hadden and Camelot expressly reserve all rights, remedies, and defenses available to them, and nothing in this letter or the attached statement provided in the context of resolving this dispute should be deemed an admission or admissible in the event of any legal proceeding.

Very truly yours,

Craig T. Boggs

CTB:ds

Enclosure

I, Colin Hadden, hereby swear and affirm as follows:

(a)     I have not contacted any IGT actual or potential  customer since joining Camelot.

(b)     I do not possess any IGT confidential information, nor have I ever supplied any such information to Camelot.

**Colin Hadden**

Signature_____

Date:____11 - 27 - 17_____